Rines *v.* Bachelder.

AMOS RINES, in equity, *vs.* LUCY A. BACHELDER and others.

*Costs in chancery. Equity. Purchaser pendente lite—how affected by decree. Resulting trust—proof and effect of.*

The heirs of a person who received a conveyance of real estate at the request of the party who paid out of his own money and means the consideration of such conveyance, are liable in equity to be required to convey the property to such party, even though they may, since the commencement of the process to compel such conveyance, have sold and conveyed to some one else.

One who buys *"pendente lite,"* takes a conveyance which is liable to be avoided by the decree in the pending suit, and it is not necessary that he should be made a party to it.

If such purchaser has erected buildings upon the land before he took his deed, with the consent of the party holding the legal title, he will be entitled to a reasonable time to remove them as his own personal property. They do not, under such circumstances, become the property of the *cestui que trust.*

Heirs who are thus called upon, on the ground of a resulting trust, to convey
property of which their ancestor held the legal title, ought to be furnished
with proof of the validity of the claim, beyond the mere assertion of the
party who sets it up, sufficient to satisfy reasonable minds.

In the absence of such proof, and when considerable time elapses before the
commencement of a suit, to enforce the claim of the *cestui que trust,* if they,
believing in good faith that the property is theirs, free of any trust, make
valuable improvements thereon, they will be entitled to be reimbursed by the
*cestui que trust* for the increase in value by reason of such improvements,
and to the cost of all necessary repairs to prevent waste, and will be sub-
jected to no costs, unless, by a captious and unreasonable defence, they
make needless cost for the complainant.

BILL IN EQUITY.

Amos Rines represents that May 7, 1855, Haven Rundlett
owned certain real estate in Athens known as "the Davis farm,"
and on that day conveyed it to Charles F. H. Greene to hold in trust
for Rines, who paid the whole consideration therefor and entered
upon and occupied the estate, taking all its rents and profits till
Nov. 26, 1856, when, at Rines' request, Greene conveyed it to
Samuel Pratt, a brother-in-law of Rines, and father of Lucy A.
Bachelder and Ellen Pratt, the respondents, and sole heirs at law
of said Samuel, who died suddenly in the fall of 1863.

After holding the estate conveyed to him by Greene till Nov.
14, 1857, Pratt conveyed it, at Rines' request, to one Coombs, tak-
ing a deed of the Coombs farm in Oldtown in exchange for it.
Pratt leased this estate, accounting to the complainant for the rents
and profits for several years, and for nearly all received before the
death of Pratt, who held it in trust for Rines all this time; and
the complainant charged in his bill that Pratt's heirs inherited the
estate from their father subject to this same trust in his favor.

The respondents answered that they knew nothing of the facts
alleged in the bill, and required proof of them, as they had learned
that Rines, on several occasions, when interrogated on oath, had
denied that he had any interest, legal or equitable, in the estate
now claimed by him; therefore they required proof of the charges
of his bill.

Testimony was introduced as to the statements made by Rines

in a deposition taken to be used in an action brought by Pratt against the sheriff, for taking certain produce and stock as the property of Rines upon an execution against him (Rines); but, upon production of the deposition, it appeared that this particular real estate was not mentioned. From the depositions of Greene, Coombs and others, it was evident that the negotiations for the different farms, were conducted by Rines, who paid the consideration, and that Pratt recognized the fact that he only held them as trustee for Rines. It was contended for the defense that the land was so held in order to defraud Rines' creditors; but the complainants argued that, as between Rines and Pratt or his representatives, this was immaterial if true; and, at the same time, denied it to be true.

*D. D. Stewart,* for the complainant.

*A. W. Paine,* for the respondents.

BARROWS, J. The plaintiff brings his bill in equity to compel the respondents, who are the heirs at law and widow of Samuel Pratt, to convey to him certain real estate situated in Oldtown, upon the ground that he bought and paid for the property with his own money and means, and had the conveyance made by the grantor to Pratt, who thereupon took and held the estate during the remainder of his life, subject to a resulting trust in favor of this plaintiff, and that Pratt's sudden death prevented his conveying the same to the plaintiff, whereupon the legal title descended to the respondents; subject, however, to the same trust.

The general principles pertaining to this class of suits have been so recently discussed in this State in the case of *Dudley v. Bachelder,* 53 Maine, 403, and the cases there cited, that reiteration seems needless. Clear statements of these principles, and abundant citations of cases similar in their general description, may also be found in Perry on Trusts, §§ 126, 133, 134, 137, 138, 139.

Not controverting them, the learned counsel for the respondents, labors with his wonted diligence to make it appear from the evidence, that although the plaintiff made the trade for this prop-

erty and for that which was given in exchange and part payment for it, Pratt paid all or part of the consideration for the conveyance, out of his own money and means, only verbally agreeing with Rines to convey to him when he should be reimbursed for his advances. He relies mainly upon testimony given by the plaintiff in relation to transactions between himself and Pratt, which appear to be entirely distinct from, and independent of the one out of which the present claim grows. It totally fails to rebut the testimony given by Greene and other unimpeached and uncontradicted witnesses produced by the plaintiff, tending to establish the state of facts claimed in the bill. Perhaps it tends to excite a suspicion that this transaction, as well as those, was designed on the part of the plaintiff to enable him more effectually to defeat and delay his creditors. But the testimony fails to establish that fact, and the respondents totally ignore it, claiming through their counsel that Pratt acted throughout in good faith, receiving his deed and holding the property only to secure his own advances, and ever ready to convey it when they should be repaid. Failing to rebut the evidence adduced by the plaintiff to show that this purchase was made altogether with his money and means, the defence must fail.

But we must not be considered, in sustaining the bill, as affirming the proposition upon which the plaintiff's counsel falls back,— that, if it appeared that the conveyance to Pratt was made in order to keep the property from the creditors of the plaintiff, it would be, as between these parties, wholly immaterial. The truth of such a proposition must depend upon the relative position of the parties in the suit. If a voluntary conveyance is made for some illegal or fraudulent purpose, e. g., to delay, hinder or defraud creditors, no trust will result to the grantor. Perry on Trusts, § 165. In such a case, both law and equity will leave the parties to the transaction, precisely where their own acts and deeds leave them.

It is conceded in the bill that Pratt accounted to the plaintiff for most of the rent of the premises which accrued during his lifetime. It appears that the plaintiff made known his claim to the respondents very shortly after Pratt's. decease. They have remained in

possession for qnite a number of years since that time, and must account to the *cestui que trust* for the rents and profits. It appears that they have laid out a very considerable sum in repairs and improvements; that in 1866 or 1867, apparently before the commencement of this suit in December, 1867, they bargained the premises to James Burnham, who thereupon proceeded to erect other buildings upon the lot with the assent of the respondents, but got no deed of the same from them until 1870. This conveyance having been made *pendente lite* can have no effect to prevent the respondents from being required ultimately to convey to the plaintiff. He who takes a title under such circumstances takes the risk of having it avoided by the decree of the court in the pending suit. *Snowman v. Harford*, 57 Maine, 397, and cases there cited. *Crooker v. Crooker*, id., 395.

But Burnham having placed his buildings upon the land with the consent of the party holding the legal title, should have a reasonable time to remove them as his own personal property, to which the *cestui que trust* acquired no title by reason of their being placed there. The respondents must account to the *cestui que trust* for the use of the lot for such additional buildings during the time they hold the title, and for the damage to the realty, if any, caused by their removal. It remains to be determined what equity requires with regard to the repairs and improvements made by the respondents themselves, and the question of costs.

A portion of the repairs seems to have been necessary to prevent waste, and for these, there can be no doubt that the respondents should be reimbursed.

"It is said by Lord King to be a rule, that the *cestui que trust* ought to save the trustees harmless as to all damages relating to the trust; therefore, when a trustee has honestly and fairly, without any probability of being a gainer, laid out money by which the *cestui que trust* is benefited, he ought to be repaid." GreenL. Cruise, Tit. 12, c. 4, § 48.

The plaintiff does not appear to have accompanied the notice of his claim which he gave to the respondents, with the exhibition of

anything like decisive evidence of its validity, and he delayed for four years to bring this suit, while he must have known that the heirs were using the property as their own and while these improvements were in progress. It has been very properly said that "courts will not enforce a resulting trust after a great lapse of time, or laches on the part of the supposed *cestui que trust*, especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate." Perry on Trusts, 112, § 141.

While we do not think the delay or neglect here so great as to preclude the enforcement of the trust, seeing that Samuel Pratt, the father, is shown to have held for the benefit of the plaintiff, and to have expressed his readiness to convey to him, yet considering that heirs not cognizant of the facts, could not prudently yield a ready assent to a claim of this description unsupported by cogent proof when it was presented to them, and that they probably relied in good faith upon the mistaken belief of their father's legal advisor and administrator, we are of opinion that the plaintiff, who has thus delayed his suit ought not to be the gainer by reason of improvements made before the assertion of his claim was fortified by the production of the proof upon which we sustain it.

Accordingly, the master who must be appointed to ascertain the rents and profits for which the respondents should account, will be instructed to find the actual cost of the repairs and improvements made by the respondents, and also ascertain how much the value of the estate has been enhanced by the improvements. For all repairs necessary to prevent waste, the respondents will be entitled to be fully reimbursed, and for the actual increase of value in the estate by reason of the improvements. If these sums exceed the rents and profits accrued, the decree for a conveyance must be conditioned upon the plaintiff's paying or securing the payment of the balance found against him. If on the other hand, they prove to be less than the amount for which the respondents must account, he will be entitled to execution for the balance in his favor.

We cannot hold the plaintiff altogether free from fault in so conducting his transactions with Samuel Pratt, as to leave the

respondents so long in a state of doubt and uncertainty as to the genuineness of his claim. All things considered, he should take no costs against them up to the filing of the rescript which goes with this opinion. His right to costs henceforth must await the developments of the master's report, and may depend upon the course which shall be pursued by the respondents.

> *Bill sustained. Master to be appointed. Decree for conveyance to be ultimately made in conformity herewith.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and PETERS, JJ., concurred.